Good afternoon, and may it please the court. Deputy Attorney General Jay Goldman, on behalf of Defendant Appellants, and I request to reserve five minutes of my time for rebuttal, please. Certainly. Please keep track of your time, as you know, and we'll try to remind you, but it's your responsibility. Thank you. In 2011, the California legislature instituted a sweeping change of its criminal justice system known as criminal justice realignment. It changed a host of statutes in a number of areas. The ones that we want to address today are the ones changing parole in California, and in particular, two statutes. One is California Penal Code 3056. Now, when this Court issued its opinion in 2010, California Penal Code 3056 existed in a far different form than it does today. It consisted then of one sentence that stated that parolees were subject to return to state prison. But effective October of 2011, that dramatically changed, and the statute now explicitly bars parolees from returning to state prison. It also gave to the counties jurisdiction, custody, and supervision over all parolees with one exception, those parolees who had been originally sentenced to a life term in prison. Those parolees who were originally sentenced to a life term in prison were not subject   to a life term in prison. Wait a minute. That's not my understanding. My understanding is that it's the State that retains jurisdiction over parolees while they're on parole for the most part. I mean, and not the group that's been transferred to the counties, the separate county system, but for people who are at stake now, i.e., the people who were convicted of serious felonies and so on. While they're on parole, it's still the State that's supervising them. Well, that is correct. I should have been a little more clear. I was going to get to that. What 3056 refers to is parolees when they're in a county jail. Right. And it doesn't require that they put – even if parole is revoked, it doesn't require that they be put in county jail. It says they may be put in county jail. Well, they cannot be put in a State prison. Right. But it doesn't say they have to be put in county jail either. They could be released, I suppose, but it's not – it's not – they cannot be returned to county – to State prison. And if they are what we are – if they are in a county jail, if not if they're on the street or – or if they're in county jail, the issue here, I think, is basically who has custody, jurisdiction, and supervision. May the State, having passed this statute, may the State assign this responsibility to one of its political – its political subdivisions, as it normally can do under the Tenth Amendment. And it can because unless you're – unless the State is, as the city – as the Bacon v. City of Richmond case, for example, goes into, absent a finding that the counties are not independent of the State, and absent a finding that this was somehow some legislative subterfuge, what's left with – what's left is just can the State exercise its Tenth Amendment rights to assign its responsibilities to the subdivisions, and if, as in this case, there is some funding aspect under the government code. Kagan. But this is what I don't understand. Isn't the State that made the decision – didn't the State decide to do this? Who made the decision that these people are going to be housed in county jail? The State legislature passed that law. Isn't that the State of California? It is the legislative branch. And signed by the governor. Yes. It's the State of California, acting qua State of California, who made this decision. And the agencies in the executive branch are bound to follow State law. Okay. But it's still a decision made by the State of California to do this with knowledge that at the time all of this was – because the record had already made in this case that there was widespread ADA violations in the county jails at the time they made this decision. And that the people in the jails were their parolees who were – had revoked – were being revoked by State agency from a State position, and were going to go back on State parole afterwards. Well, actually, in 2010, this Court vacated the district court's order because it didn't find sufficient evidence of widespread violations at that time. Then she did, and you're not appealing that. Pardon me? Then she did, and you haven't appealed that. Right? Is that wrong? I believe the Court's 2010 decision vacated – I understand that. But then the district court found – on the remand found widespread violations, and you have not appealed that finding. No, we are not appealing the evidentiary findings. That's correct. Okay. Which were made before this law was passed. No, actually, 30 – the amended 3056 went into effect on October 1, 2011. Not this one. Not the one you're relying on now. Well, it was amended further in June of 2012. That's correct. But the 2011 version said that counties have jurisdiction and custody and supervision over parolees in a county jail. That was concurrent and you changed it to exclusive in the second one that you mentioned, the 2012 version. No, the 2011 version does not have the word concurrent in it. No, but that's what the Court found it meant, that you had to have exclusive for you to achieve your purposes of depriving the courts of their authority to – or your attempt to make – to have the courts deprived of its authority to order that the people being held be treated according to ADA. The legislature's purpose in the second one was to meet the court's decision that you still retained custody. And after that, the legislature changed it to take custody away from the State and leave it exclusively with the county. No, Your Honor. The district court was incorrect in its interpretation of that. Well, then you wouldn't have had to change the statute if they were incorrect. All you had to do was appeal. The legislature further clarified the statute, but as we have consistently maintained and did before the June 2012 amendment, that the district court was incorrect when it reached that conclusion. It had not – in none of its orders does it show an analysis of the terms of the statute using California's rules of the statutory interpretation. Instead, what the district court concluded was that, based on the fact that the funding provisions, the tax pass-through provisions in the Government Code at 3,325 and 329, it was concluding that under the 2011 version of Section 3056, the word concurrent should be read in there prior to the term jurisdiction, in custody of the county jail facilities. May I ask you one factual question? I don't want to interrupt the legal issues, but I'm just talking about the facts. The parolees, if their parole is revoked, they can be put in the county jail for up to 180 days? That's correct, under 3056. And is that the maximum punishment or maximum consequence of violating parole? They can't – that's the end of it, 180 days, county jail, no further consequences? That's what the statute provides. Okay. One other question is with regard to parole revocations. I mean, the process before parole is actually revoked. My understanding is that as things stand now, it's State agents who invoke the parole revocation and State agents who arrange for the – to pick the person up and, I guess, to place them in the county jail, and then to run the proceedings, which are often run inside the county jail, is that right, by State agents? They're – to answer those questions in reverse order, I guess, where the proceedings are run are usually somewhere in the county jail facilities. Often that's in a separate building in the complex. And anyone, any peace officer under the Penal Code can arrest a parolee if, of course, they have the correct basis to conclude that that parolee is violating the conditions of their parole. When that parolee is then arrested and in a county jail as a result, if the county has accepted that parolee and is booking them, of course, they still have due process rights regarding their revocation proceeding. And so, of course, a notice agent would serve them with their notice of rights and anything in the law. Kagan. I mean, I think that way back when this case had a whole lot of pieces around the parole revocation process, are those all out of the case now? I mean, are you – I mean, are you agreeing that at least with respect to the actual parole revocation process that the orders regarding access to that process for disabled people are still binding orders? Well, certainly. Whatever responsibilities that the defendants have can be used to do that. Even including access in the county jails? For example, if there's a parole revocation proceeding, even if it's in a county jail, obviously it could not be because for the next 10 months defendants will still be adjudicating those proceedings. For that period of time, we couldn't, for example, hold it, even if it's in a county jail, somewhere where a wheelchair-bound parolee would have to go up. We're talking about being housed in a county jail while this was going on and with – I just wanted to clarify that. And with regard to if parole is revoked, the serving of the sentence for parole revocation. No. The statute provides, and it has since October of 2011 when it went into effect, that the State defendants have no jurisdiction, custody or supervision over a parolee while they're in a county jail. It doesn't mean that we can, for the parts we retain, such as parole revocation proceedings, that we can ignore the ADA requirements, and we wouldn't, of course, regarding access to the parole proceeding, being able to attend, being able to have it accessible to wheelchair-bound people, and so on. And, of course, an agent may enter a jail to deliver the notice of rights to a parolee about that proceeding, just like a parolee in a county jail could get other due process sort of done, too. But most of the – another thing that's confusing me is this. The order, as I read it, the original order that was appealed, has essentially one substantive provision. The rest of them are a lot of sort of paper and notices and grievances and so on. But which I don't – and the only one – and there's only one sentence that says something to the effect of, and if the county doesn't do something, you should move them or do something else. And my understanding is that the – you then went back and renegotiated, and there's now another order, which is – which the district court recently upheld, and it doesn't have that provision anymore. Is that much correct? So what are we looking at? What's on appeal right now? To a degree, although the district court did not state that the terms of its prior order were terminated. I'm sorry, what? The district court did not state that the terms of its prior order were terminated. But there is this other plan that became a second district court order. That is correct. But what we're looking at is whether, as a matter of law, a State agency can be subject to a remedial order from a district court where it has no legal responsibility for what the order is trying to remedy. Well, don't you think the answer might be different with regard to a remedial order that requires notice and essentially some procedures because you place these people in this place, and may be different with regard to an actual affirmative order to see that they're accommodated? Any responsibility in a remedial order that any defendant in a given case is assigned where that defendant does not have the legal responsibility for the tasks and the parties embodied in that order is without a legal basis. Excuse me. So it is legally incorrect. And in a case here, we have important Federalism concerns, and we also have, for example, under the district court's order, it conflicts and wouldn't comport with, for example, the Fourth District's conclusions and holdings and analysis in the Bacon v. City of Richmond case. Let me ask you one more question. I'm trying to understand the facts. Is the parolee who's on parole for three years, his parole is revoked. He then goes to county jail for 180 days. Is that the end of his parole? We're 3056 pertains to, and a part of the district court's order that we are repealing is parolees starting October 1st, 2011, they're subject to no more than six months, 180 days in jail. Yeah. And then what happens to them? You said that's the end of the consequences? Well, the parole term is limited to, I believe, a year under the new criminal justice realignment. But the answer is that he goes back on parole under the supervision of the State if there's more parole time left, no? Well, if there – it depends on how long they've been in county jail and things – and whether they are adhering to their conditions and good behavior and so on. It could be reduced. I'm sorry. Isn't – my understanding of the factual record is that they go on revocation and then they come back and now they're back on parole, unless somebody absolves them of it. But ordinarily, that's the situation. Well, that's correct. I mean, let's say, for example, a parolee is in county jail. Their parole is revoked. They're given a one-month revocation term, and after that, they're still on parole. And they, as the statute says, they return to the supervision of the Department of Corrections and Rehabilitation. All right. We'll give you another five minutes, and you can – well, take another two or three minutes here, and then we'll give you five minutes for rebuttal. I appreciate that. Thank you. Let's try two minutes, okay? And we'll try to let you finish. I will be as concise as I can. The crucial distinctions, and the reason this case is so much like the City of Bacon, is unlike the Armstrong case in 2010, where this Court dealt with Penal Code 4016.5 and the daily jail rate, which is found to be an arrangement similar to a contract. A county got money if there was a parolee in their jail for a day. If there were no parolees in their jail, they got nothing. But now that has changed. And the State does not have jurisdiction, custody, or supervision over parolees while they're in county jail. There is no operational control by the State over the county jails, like in the City of Richmond, the Bacon case, where the Court first looked at was there something more than just a notion, which it rejected on Tenth Amendment grounds correctly, of, in a sense, strict funding liability. If one entity is giving another entity money, was this an area where could the City of Richmond be responsible for ADA violations by the school district that it had given money to designated for capital improvements? Here we have a very similar situation. The State does not have any operational control of the county jails. It doesn't decide which, you know, which inmates are getting what privileges or that sort of thing. And this panel, not this panel, but this Court has previously found in Street v. L.A. County that the sheriffs under California law run the county jails and that the counties are not agents of the State. They are an independent political subdivision. And whether the two entities in the Bacon case were independent was also looked at by the Fourth Circuit. And then last, the Fourth Circuit looked at whether this was some sort of a subterfuge to get around a prior remedial order. And when Penal Code 3056 was passed in 2011, there was no remedial order in place, number one. But number two, looking at, for example, the case that the plaintiff cited, this is not like in those cases, a legislative act obviously intended to preserve discrimination. This is instead a reform of the criminal justice system, as they've said in Penal Code 17.5, designed to reduce recidivism. That is the purpose. And if we do not, even if it was to save money or reduce the prison population, again, the legislature, even by any of those three motivations, by changing the entire parole system for everybody, is not colluding to somehow, you know, with the counties to somehow get out of a prior remedial order, especially when none existed. Vacating the district court's order as to non-life-term parolees in county jail under 3056 comports with the holdings of the Fourth Circuit and federalism principles. And it cannot be in any way, shape, or form, we contend, reasonably construed to be an arrangement under the ADA regulations, because although there are some very broad funding descriptions in the government code, it is like the broad funding description where the city of Richmond gave money to the school district, not under  Sotomayor, this is the part I'm having trouble with. Who is putting these people in the county jail? Who is deciding that they're supposed to be serving time in a county jail? Well, any – in terms of the arrest, any California police officer – Not just the arrest, the determination. People under this statute. Yes. Who adjudicates the parole revocation proceedings? Well, I – yes. Now, who decided that they should be put there, I think, is what's being asked. Right. It's the State – well, as you say, the State legislature and governor. Well, that, and also the particularized determination in each instance is being made by State agencies on behalf of the State, because it's the State's parole that's being revoked, right? No, the State agencies are bound to fowl the statute passed by the legislature. Well, that's where they put them, but who makes the decision? An ex-individual person should have their parole revoked and, therefore, go to county jail. Well, that will be State court in 10 months. All right. It is in 10 months now. But right now, it's a board of parole hearings. Okay. But there is no law to support the notion that the adjudicator of whether somebody should receive a criminal punishment is then liable or responsible for the ADA or other conditions of a jail or prison that they may sentence that person to, just like there's no law to support the notion that an officer who arrests someone and books that person, for example, in a county jail, will be responsible for the penalty. I am sorry about that. Thank you.  Good afternoon. May it please the Court. I'm Gay Grunfeld for the Plaintiffs. I wanted to start by just answering a couple of points, factual points. When a person is on parole and the term is not one year, it's typically three, five, or seven years, and they are incarcerated on a parole revocation term, their parole continues thereafter, and that time does not count towards the parole. So they go back to State parole. Also, yes, it is the State of California that is deciding to put people in the county jails, both through their parole agents who can arrest and hold people on warrantless no-bail holds and put them in county jails, and then the adjudications that are conducted regularly. We are told there's approximately 10,000 parole proceedings. That includes the notice of rights, the probable cause hearing, and the revocation hearing every month. And what realignment did is make the county jails even more important, and that is why this very narrow order is so important to alleviate the significant systemic harm. Which order are we looking at? This is the part I'm really most confused about. Are we looking at the order that was originally appealed or the order, as I said, the order that was appealed, that the State gatherer was refined through negotiations and through the last order of the district court, which doesn't have, as I understand it, any substantive provision anymore. Is that right? Is the latter right, first of all? That there's no longer a requirement that the State is essentially supposed to advise the counties of problems and cajole them, but has no ultimate responsibility to do anything under the current last order. There are actually two orders and a plan at issue here. There is an order that was issued on April 11th that is the Rule 60b-1 and b-5 denial order. There is an amended county jail injunction that was issued on that same date, and pursuant to that injunction, there is a plan that the parties negotiated and that was about to be issued when the plaintiffs moved in their emergency motion to have the plan rolled out. The plan has now been rolled out, and while we consider the requirements of it substantive and helpful, and we believe that they will make an enormous difference, they are not things that conflict with 3056a as amended. So, for example, they do not require anyone to go in and make a cell accessible or take any action that's inconsistent with the, quote, sole custody and jurisdiction of a county jail.  Sotomayor, which is different from the original April 11th order. Is that right? I don't consider it different. I think what you may be referring to is that there was language in the April 11th order, as I recall, that said something to the effect of if they can't, if they don't fix it, you should move them or you should, you know, see that it's fixed. And that's not in there anymore. In the September 2009 order, there was language to that effect. In the April 2012 order, the closest you could come to that is provision G and F, which require the State to either take steps, and those are undefined, or in G, the State is required to investigate patterns of denials of disability. But those provisions are less. And then there's the August 28th order. Yes. Now, that's an order that's based on an agreement that you and the State had made at some point that I'm not sure the State still agrees to. Can you tell us what the State – that order is, I think, the kind of changes that Judge Berzin was talking about, where the State has fewer obligations than it did at any time previously. Now, is – what's – what is on appeal? And as I understand it, the State thinks that there should be no order. Yes, Your Honor. The State has appealed to the State. And what are you arguing for? The August order, the April order, or something even broader than that? Not broader. We – the State has appealed the two orders from April, and we asked the Court to affirm both orders, but in particular, the longer order, which is what we call the county jail order, and it can – it can stand regardless of amended 3056A. But the April 11th order is what the State appealed? Yes, Your Honor. And what's the – what's the status or role of the August 28th order, then? The August 28th order required the defendants to say – No, I mean, what is the role of it as far as this appeal is concerned? Are you both going to dispense with that order and just ask for – you ask for the enforcement of the April order, and they object to it? Is that all that's before us, or is the August order in some way before us also? I do not believe it is before you. It's a post-appeal order that required them to roll out the county jail plan. But it does illustrate why this is not an onerous or difficult burden on them, since they have now started sending out the daily e-mail notifications to the jails. Can you speak a little more into the mic? So sorry, Your Honor. They've now started sending out the daily jail notifications on September 1st to the county jails, telling them that such and such a person has come in with such and such a disability to your jail. And this is a really important part of the county jail plan and the county jail order, because it will allow the jailers to know the kinds of disabilities that are coming in and to accommodate those. And that's part of the identification and tracking that this panel has previously held is crucial to complying with the ADA. And so if you look at the April 11th order, all it's holding defendants responsible for is their own actions in carrying out their own parole program, which they have many times not complied with the ADA with respect to their parole proceedings. And so this is a very narrow order. And if you take each aspect of the order and compare it to the language of newly amended 3056a, you will see that it is still possible to comply with the order. Well, Ms. Grunfeld, let me ask you this. This is for me the bottom-line question. Since the appeal was noticed and filed, the legislature changed, amended the statute, right? 3056? Yes, Your Honor. And the state's position is that that amendment undercut the entire statutory basis of your complaint, namely that under the law, the state had custody of these parolees once they were brought into the prison, whether state prison or county jail. Now, why shouldn't that amendment be given effect? In other words, your case is based upon the State's Department of Corrections statutory responsibility, and that statute's been amended, so they no longer have that responsibility. Actually, our case is based on the ADA, and if you will recall the ADA, they're the State's Department of Corrections, so they no longer have custody of these parolees, right? Well, they're class members in a class action brought under the ADA, which the Federal Court of Appeals. They're a class of parolees, and the reason that you sued the CDC is because the CDC has custody of them. Isn't that right? That is correct, Your Honor. That's how you get the ADA hook on them. And so once the State statute is amended so they no longer have custody, in effect, I think the State is saying, well, now you're suing the wrong defendants. What's your response to that? We are suing the correct defendants because they continue to run their program of parole and have custody and jurisdiction over our clients in their own operations, the arrest, the serve, the funding of the parole program, the decision to revoke, the decision to use the county jails, in all aspects, supervision. This is a State program, and these State defendants are running it, and we are seeking this narrow remedial order, which will ameliorate a lot of problems. Then the question is, I think, if it's a State program and they're running it, and part of the program is to put them in a place where the legislature says that the judge of that place has control and supervision over them while they're in the county facility, the question is, why, then, is there jurisdiction in the courts, or why should they – how can there be an order to the State as to what to do about them while they're in the county facility and under the control and supervision of the county? And I think that's the question. What is the answer to that question? They continue to operate parole and be parolees, and the State is continuing to interact with them, and there's nothing in the district court's order that is inconsistent with the jailer maintaining the key as to what to do. That's why I keep focusing on which order, because the April order says, if defendants become aware, either through a grievance or otherwise – no, that's not the one. I'm sorry. If either through a grievance or otherwise defendants become aware of a class member who was housed in a county jail and not receiving accommodations that he or she requires, defendants shall immediately take steps with county jail staff to ensure that such accommodations are promptly provided or transfer the class member to a facility that is able to provide accommodations. And that does seem to require the defendants to do some things that, if one – unless one displaces this statute by saying the State can't do this under the ADA because it's – it is inconsistent with the statute. But the August 28th order doesn't have such a provision, and that's what I'm trying to figure out. The August 28th order has a bunch of provisions that deal with essentially finding out – telling this county what these people's problems are and finding out if they're having problems and trying to assist the county in making its own decisions. But it's – but it doesn't seem to be interfering with the county's custody. And the answer to the two questions might be very different, depending on whether that provision is in or out. That's right. And this provision that you've just read, F of the order, has not yet been invoked. We haven't even gotten there yet because until Saturday – That's in the order we're reviewing. So do we – but it's not in the order that the district court just said she's going to enforce. So should we be remanding it to her and telling her, take this one out and then you're fine, or what? I think you can affirm this part of the order because although 3056A as amended has the sole custody and jurisdiction language, it does not put the end to the ADA. It does not end parole in the State of California. Parole is continuing. And it has a multitude of aspects. The counties and the State work together all the time. And the county – the State can say to the county, you know, you should look at this guy. And that might – But that's different. You should look at the guy as one thing, and you should take steps with – to ensure that such accommodations are promptly provided or transfer the class member to a facility that's able to provide accommodations as something else. It is or there. So I think the issue could come up if the State were accused of not complying with this in a particular situation. But there's – it's not impossible to comply with this part of the order and live with 3056A as amended. If it were impossible, then I suppose you would have to get into some of the other arguments in our brief about – It could mean to encourage the county jail staff to do something or compel the county jails. Those are two totally different meanings. And one might be – might be valid under the law, and one might not. Certainly, I don't think anything – well, I shouldn't say certainly there isn't. But it's certainly a wholly different obligation of the State if it has its parolees in a jail under someone else's supervision. It's one thing to say you should encourage the people who are housing your people. You should communicate with them and talk to them. It's another to say you must ensure that they do something. And I'm not sure exactly what the injunction would mean under the law as – as a version of the law. It might well be that the district court, if asked to consider some of these things in view of the latest version of the law, might reframe its injunction in certain ways in an effort to make sure it's complying with the law. Or it might decide it's perfectly correct as it is. Or it might do what the State says and say, we don't want to do anything about it. Let me ask a sort of an underlying question to the inquiry Judge Reinhart is pursuing. Is it your position that Section 305-6, as amended now, should be – is entitled to be fully enforced and recognized? I think it can be consistent with the Court's order as it is written, the April 11th order. So you're not making any kind of case that this Court should in some way ignore or limit the reach of 3056 just because there's an injunction here? I'm arguing that 3056 as written does not mean what defendants contend it means. It does not mean that the defendants cannot have any interactions with the county jailers. If that were true – All right. So your debate and difference with the State defendants is how 3056 should be interpreted? Yes, Your Honor. All right. Thank you. In that connection, you mentioned in your brief, and I found it interesting, but I couldn't quite see what it connected up with, that the State ADA version seems to have broader language with regard to the responsibility of State subdivisions or when funded by the State, perhaps, than the ADA does now. But there is no – this suit has never been under the State ADA. I don't know why, but it hasn't been, right? It is not. And those statutes are cited to illustrate that the district court's order is fully consistent with California law. Now, as amended and before, the State has a responsibility in running its own programs to comply with the ADA. That's what it hasn't done here. That's what the district court is trying to address. And it's somewhat related to the Tenth Amendment arguments, because if the State sees that much interconnection between these entities, then it's not interfering with the State to require them to do essentially what the State says they're supposed to do. Correct. And on that note, the Bacon case, of course, we contend is very, very different. There, you had a – here, you have a finding of fault, and you have a government agency that's running a program that is violating the ADA and the way it runs that program by not providing disability information it already has to the county jails when it puts people in there and not letting them have a grievance process and all the other things that we've documented that is resulting in very real harm, as documented in the Woodford Declaration and all the other declarations that were filed in support of our motion. I would just conclude with the Court's own words that the rights of individuals are not so ethereal that they can be vitiated through the housing in the county jails. This is a violation of the ADA, and the district court has taken very narrow steps to address it, and we ask the Court to affirm the April 11th order. Thank you. I have one very short question. Is the Governor a defendant in this case? Yes, he is. Anything else? Thank you, Your Honor. Okay. As you know, we've given you considerably more time, but we'll give you five minutes, no more. You've been most generous. I very much appreciate it. Let me just start off with the two orders that I've heard some questions raised about. First of all, we have the April 2012 order, and that order has not been terminated by the district court. The August 28th order was in response to a motion to enforce the April order. And second --" I'm not going to enforce that provision, the one I read, right, essentially. Which provision was that? The one that I read before. I can read it again. That's right. She may have. I can't read to be honest, I can't recall whether she made that statement. But it's not in there, okay? It's just not in there. But both the orders are explicit, the April 11th one especially, that this is, as far as the district court is concerned, defendant's responsibility over these parolees in county jail under 3056 to ensure adequate accommodation of their ADA rights. We have that in our excess of the record at page 29, for example. I think the order is that they should use or make their best efforts to ensure. Well, on page 29, it doesn't qualify that in any regard. But the fact is, for a defendant to have a responsibility to make their best efforts regarding a group of plaintiffs, the plaintiffs must have some responsibility for what it is that is happening to those plaintiffs. A defendant, in this case, my clients, are responsible only for their actions. And as as ---- But let me just ask you hypothetically. Suppose that the State decided that they were going to have, that you were going to have, all of your people are going to be housed in private prisons, right? And you place people in private prisons that have absolutely no ADA accommodations. And suppose this ---- I mean, you seem to think it matters whether that's by contract or statute, so let's suppose it's by statute. Would you have the same argument, if you had ---- you were placing them in places that you knew had no accommodations for them? I can't see how a private prison wouldn't be at least a contract-like situation because what we're talking about here is a State's power reserved to it under the Tenth Amendment to assign responsibilities to its political subdivisions. And I have not examined the private prison issue and cannot say authoritatively what all the law is on that, but I can talk about this. But who is assigning it? It's the State of California. That's the State who's making this decision. And the governor is a defendant in a lawsuit, and the governor signed the legislation. Right. Because ---- and the reason the State gets to make that decision is the U.S. Constitution and the Tenth Amendment, which reserves the powers to the State that are not taken up by the Constitution or a Federal law. And there is no law or constitutional provision that says the State cannot delegate responsibilities to its subdivisions. It does that all the time. For example, in the Penal Code, there is numerous provisions where if you are violating that provision and you're convicted, you will go to county jail, for example, on a misdemeanor crime. That's a perfect example. So who gets to decide that? The State legislature. Why do they get to decide that? Because the U.S. Constitution says so. And here what we have is a situation where, as my colleague just said, that they're seeking to hold my clients responsible for their own operations regarding the ADA. The county jail, as this Court has found, is not a State operation. The counties are not agents of the State. What we have here is a situation where, starting in October 2011, and if there was any doubt as to what the legislature meant, I think it's very explicitly clear, starting in June 2012, the State no longer has custody, jurisdiction, or supervision over these county jail inmates like other county jail inmates. And thus, to have an order, the April order is what we're appealing, but also the enforcement order off of that April order, holding the State responsible, for example, investigating ADA allegations in a county jail, running a grievance system for those people in a county jail, is, of course, asking the State to be responsible for the actions of other entities when it has no ADA responsibility on the ADA law to do so. Okay. Thank you, counsel. Thank you. The case, as targeted, will be submitted. The Court will stand in recess. All rise. Court is adjourned.
judges: Reinhardt, Tashima, Berzon